```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF RHODE ISLAND
```

- - - - - - - - - - - - - - - - - - -
                                      :
UNITED STATES OF AMERICA              :
                                      :
     vs.                              :    CR. No. 03-049-S
                                      :
RYAN J. CRAIG                         :
                                      :
- - - - - - - - - - - - - - - - - - -

MEMORANDUM AND ORDER

William E. Smith, United States District Judge.

Ryan J. Craig has filed a letter to this Court which the Court construes as a motion contesting a levy of execution. For the reasons stated below, the motion is denied without prejudice.

I.   BACKGROUND AND TRAVEL

In 2003 Craig was convicted in this Court of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 371 and 1343. This Court sentenced him to 27 months imprisonment, followed by three years of supervised release, and ordered him to pay $58,002 in restitution to some 30 different victims of his offenses (the "RI victims").[1] (See Judgment dated Dec. 2, 2003 at 2-3, 5.) On March 8, 2004, the Government filed a Notice of Lien evidencing this restitution obligation, pursuant to 18 U.S.C. § 3613(c), in the

---

[1] This Court made Craig's restitution obligation joint and several with that of Craig's co-conspirator, Arthur A. Jordan. See this case (CR No. 03-049-S), Judgment dated Dec. 2, 2003 at 8; see also Judgment in United States v. Jordan, CR No. 02-046-ML.

Office of the Prothonotary, Lancaster County Courthouse, Lancaster, Pennsylvania.

On September 6, 2005, this Court transferred jurisdiction over Craig to the Eastern District of Pennsylvania, but the record of Craig's restitution payments remained with this Court.  (<u>See</u> Transfer of Jurisdiction Order dated Sept. 6, 2005 (Doc. #36).) Although Craig (and his co-conspirator Arthur A. Jordan [CR No. 02-046 ML]) have made some payments to date towards this restitution, the current amount owed on the Rhode Island restitution is approximately $57,629.20.

In June 2006, Craig was indicted in the U.S. District Court for the Middle District of Pennsylvania (the "M.D. Pa. court") on separate charges of wire fraud and related offenses.  Incident to that prosecution, probationary jurisdiction over Craig was transferred to the M.D. Pa. court.  On May 10, 2007, Craig pleaded guilty to two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of failing to appear for trial, in violation of 18 U.S.C. § 3146.  The M.D. Pa. court sentenced Craig to 71 months imprisonment, and ordered him to pay restitution to his victims in the amount of $12,411.  <u>See</u> <u>United States v. Craig</u>, Dkt. No. 1:06-CR-0219 (M.D. Pa.), Judgment and Commitment Order dated Dec. 14, 2007 ("M.D. Pa. Judgment").

Upon motion by the Government, the M.D. Pa. court in July 2008 ordered that Craig's restitution obligation be satisfied from

$16,432 in funds that had been seized from Craig at or around the time of his arrest.[2] (Id., Order dated July 28, 2008.) In December 2008, that court denied Craig's motion for the return of the balance ($3,631) and ordered that those funds be transferred to this Court and used to satisfy the outstanding restitution amounts still owed by Craig to the RI victims in the Rhode Island case. (Id., Order dated Dec. 30, 2008.)

Craig appealed, and the Third Circuit reversed the transfer order, stating that the District Court had no authority to direct restitution in the Rhode Island case. United States v. Craig, 359 Fed. Appx. 289, 2009 WL 4609762 (3d Cir. Dec. 7, 2009). The court of appeals found that the RI victims were not "victims" of the Pennsylvania offense, as that term is defined in 18 U.S.C. § 3663(a)(2),[3] and concluded that the M.D. Pa. court therefore lacked authority to transfer the excess funds to this Court for distribution to the RI victims. Id. at 291-92, 2009 WL 4609762 at **2. The court further noted that the Government itself was not a "victim" in this matter and that it could not use its position as

---

[2] From the record it appears that of the $16,432 amount, $9,000 was seized from Craig's account at Bank of America pursuant to a seizure warrant issued by the District Court on January 30, 2007 and another $6,900 in cash was seized at the time of Craig's arrest. In any event, all of the funds appear to have been located in Pennsylvania when seized.

[3] 18 U.S.C. § 3663(a)(2) defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered."

3

a party in both the Pennsylvania case and the Rhode Island case as a means to compensate a private third-party (i.e., the RI victims). Id. at 292, 2009 WL 4609762 at **2.  Finally, the court concluded that although probationary jurisdiction over Craig's supervised release had been transferred to the M.D. Pa. court, this jurisdiction did not confer any authority on that court to direct restitution in the Rhode Island case.  Id.[4]

In January 2009, during the pendency of Craig's appeal to the Third Circuit, the funds in issue ($3,531)[5] were transferred to this Court from the M.D. Pa. court, and those funds currently remain in the custody of this Court.

On December 14, 2009, one week after the Third Circuit's ruling, the Government applied in this Court for a writ of execution as to the excess funds in question.  After the application was revised and resubmitted at the suggestion of this Court, the Clerk's Office issued a writ of execution on April 6, 2010, and the Government sought to levy on the excess funds in question.

---

[4] A dissenting opinion concluded that the Rhode Island restitution order could be "enforced by the United States . . . by all . . . available means," 18 U.S.C. §3664(m)(1)(A), and that the transfer order was an appropriate means to enable the Rhode Island victims to obtain partial restitution without undue expense. United States v. Craig, 359 Fed. Appx. 289, 293, 2009 WL 4609762 at **3 (3d Cir. Dec. 7, 2009) (Fuentes, J, dissenting).

[5] These were the net funds remaining after a $100 bank charge was deducted from the original $3,631 excess funds.

On April 21, 2010, Craig filed a letter challenging the levy, contending that the above-mentioned Third Circuit decision required that the funds be returned to him. This Court construed the letter as a motion to contest levy of execution and ordered the Government to respond. (<u>See</u> Order entered on Apr. 21, 2000 (Doc. #41).) The Government has filed an objection to the motion, arguing *inter alia* that the Third Circuit decision did not preclude the Rhode Island victims from seeking restitution from the $3,531 excess funds by all lawful means. This matter is now ready for decision.[6]

## II. DISCUSSION

The transfer of the $3,531 in excess funds in question to this Court was contrary to the Third Circuit's ruling that the M.D. Pa. court did not have authority to make such transfer. <u>See</u> <u>Craig</u>, 359 Fed. Appx. at 292, 2009 WL 4609762 at **2-3. Thus, those funds must be transferred back to the M.D. Pa. court without delay.

The issues before this Court thus are: (1) whether the Government may levy on the writ of execution, notwithstanding the Third Circuit's decision, and (2) whether the writ of execution issued by this Court is proper in light of that decision.

---

[6] Although Craig has requested a hearing on his motion, no hearing is required, as there are no issues of fact, and this Court has all the papers and information necessary to determine the motion.

5

A.  Levy on Execution

Craig contends that the Third Circuit ruling effectively invalidates the writ of execution and that the Government's levy on the funds was an attempt at a "back door seizure" of his property. This claim misconstrues the scope and effect of the Third Circuit ruling.  In its decision, the court of appeals ruled that the M.D. Pa. court's order transferring the excess funds to Rhode Island was beyond its authority.  The court specifically noted that its ruling did not prevent the Rhode Island restitution victims from seeking to garnish or attach the seized funds or otherwise pursue collection of monies owed to them "through any lawful means that may be available to them."  Craig, 359 Fed. Appx. at 292, 2009 WL 4609762 at **3.  The court's decision, of course, did not address the validity of the execution subsequently issued by this Court, nor did it prohibit any direct levy on the funds in issue. However, the Third Circuit did note that "the [g]overnment is attempting to use its position as a common party . . . in both the Rhode Island and Pennsylvania cases as a means to compensate a private third party [the RI victims]" and that "[t]his is not what [18 U.S.C.] § 3663 contemplates." Id., 2009 WL 4609762 at **2.

After reviewing the records and papers in this case and given the current status of the funds in question, this Court finds that the issue of the validity of the Government's levy on the funds in issue is more appropriately addressed by the M.D. Pa. court rather

6

than this Court. Upon re-transfer, the $3,531 in question will be located in the Middle District of Pennsylvania -- in or near the location where those funds were originally seized and held prior to the transfer.

Although this Court issued the Restitution Order (this case, Judgment, Doc. #23) under which the Government is attempting to levy on the funds in question, the use of specific funds located in Pennsylvania to satisfy that Restitution Order should be addressed by the court which has lawful custody of those funds.

This Court need not determine the precise procedures to be followed by the Government in levying on the execution or whether the Government may proceed under procedures set forth in the Federal Debt Collection Procedures Act of 1990 (FDCPA), codified at 28 U.S.C. § 3001-3308, the Mandatory Victim Restitution Act (MVRA), codified in part at 18 U.S.C. § 3663A, or otherwise. This is a matter which should be addressed by the M.D. Pa. court, in its discretion, after the funds in issue have been transferred back to its jurisdiction.

B.  Writ of Execution

There is a separate question as to the appropriateness of the writ of execution itself. Generally, the Government is entitled to a writ of execution in connection with a restitution order. Title 18 U.S.C. § 3664(m)(1)(A) expressly provides that a restitution order may be enforced by the United States by all available means,

including a writ of execution. The United States may use civil enforcement procedures to enforce a criminal judgment. See 18 U.S.C. § 3613(f). A judgment imposing a restitution may be enforced in the same manner as a fine, against all property or rights to property of a person so sentenced, subject to exceptions not applicable here. See 18 U.S.C. § 3613(a), (f).

Here, however, the Government's application for the writ specifically targeted the funds in question, and this Court was unaware of the Third Circuit's ruling at the time that it issued this writ of execution.[7] Nevertheless, given the above determination that the validity of levying on the funds in question pursuant to this execution is better determined by the M.D. Pa. court, this Court need not vacate the writ of execution itself at this juncture. Should the M.D. Pa. court determine that the funds in question may not be levied on and must be returned to Craig, this Court will, upon request of either party, then address whether the writ of execution issued on April 6, 2010 should be vacated.

The foregoing notwithstanding, the Government may at any time seek a further writ of execution in connection with this Court's Restitution Order, as to any property other than the excess funds in question, in favor of the Rhode Island victims.

---

[7] This Court finds it a bit puzzling, if not troubling, that the Government made no mention whatsoever of the Third Circuit's ruling in either its initial or subsequent application for its writ of execution, even though that ruling concerned the very funds for which that execution was sought.

8

Having deferred this matter to the M.D. Pa. court, this Court makes no comment on the respective rights of the Government and Craig to the funds in question, arising from the writ of execution, any judicial lien or otherwise.  Nor is this ruling intended to have any effect on Craig's restitution obligations under the Restitution Order issued in his judgment of conviction in this Court (CR No. 03-049-S), obligations which remain outstanding and fully enforceable by the Government to the extent permitted under law.

III. CONCLUSION

For the reasons discussed above, this Court hereby ORDERS as follows:

(1) the Clerk's Office shall FORTHWITH transfer the funds in issue ($3,531) back to the Clerk's Office for the U.S. District Court for the Middle District of Pennsylvania;

(2) Craig's motion contesting levy of execution is hereby DENIED <u>without prejudice</u> to Craig's bringing such motion, or any other motion with respect to the funds in issue, in the M.D. Pa. court, as permitted by that court; and

(3) the writ of execution issued by this Court on April 6, 2010 as to the funds in question shall remain in force until otherwise ordered <u>without prejudice</u> to the Government's seeking any further execution as to any other property in which Craig has a nonexempt interest, in connection with this Court's

9

    Restitution Order as set forth in the Judgment (Doc. #23) in this case.

It is so Ordered.


*/s/ William E. Smith*
William E. Smith
United States District Judge
Date: July 16, 2010